## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Kyle Bobay, D.O.
810 Versailles Drive, Apt. L
Centerville, Ohio 45459

       Plaintiff,

  vs.

Wright State University
c/o Office of General Counsel
3640 Colonel Glenn Hwy.
Dayton, Ohio 45435-001,

and

Tom Gunlock, Marty Grunder,
Andrew Platt, Dawn Conway, Douglas A.
Fecher, Sean Fitzpatrick, Ranjan
Kejriwal, Bruce Langos, William W.
Montgomery in their official capacity as
members of the Board of Trustees of
Wright State University
c/o Office of General Counsel
3640 Colonel Glenn Hwy.
Dayton, Ohio 45435-001,

and

Kettering Adventist Healthcare dba
Kettering Health Network,
c/o Statutory Agent
Michael D. Macomber, Esq.
1 Prestige Place, Suite 580
Miamisburg, Ohio 45342,

      Defendants.

**COMPLAINT FOR TEMPORARY
RESTRAINING ORDER AND
INJUNCTIVE AND DECLARATORY
RELIEF**


**JURY DEMAND ENDORSED HEREON**

CASE NO.

JUDGE:

1

For his complaint against defendants Wright State University and its Board of Trustees (collectively, "Wright State") and Kettering Adventist Healthcare dba Kettering Health Network ("Kettering"), plaintiff Kyle Bobay, D.O. states as follows:

## INTRODUCTION

1.  This is a civil action for declaratory and injunctive relief arising under the First Amendment of the United States Constitution, Article I, Section 1 of the Ohio Constitution and federal and state statutes described below.

2.  This action involves the constitutionality of the denial of a religious exemption from a vaccine mandate under the First Amendment and the constitutionality of the vaccine mandate under Article I, Section 1 of the Ohio Constitution.

3.  Plaintiff has been notified that a graduate medical education agreement (the "GME Agreement") that he has entered into with defendants will be terminated on January 4, 2022, on the grounds that his request for a religious exemption from a Covid-19 vaccine mandate has been denied and that he has failed to provide proof of having received a Covid-19 vaccination.

4.  The denial of the requested religious exemption is a violation of the First Amendment of the United States Constitution and 42 U.S.C. §1983 in that the denial does not meet constitutional requirements.

5. The termination of the GME Agreement is a violation of Article I, Section 1 of the Ohio Constitution, which encompasses rights of personal security, bodily integrity and autonomy, and 21 U.S.C. §360bbb-3 in that it violates plaintiff's right to refuse medical treatment.

6. The Covid-19 mandate is a violation of O.R.C. 3792.04 in that it mandates vaccines that are only authorized for emergency use.

7. The termination of the GME Agreement violates Title VII, 42 U.S.C. §2000e et seq. and O.R.C. 4112 et seq. in that defendants have failed to accommodate and have retaliated against plaintiff's religious beliefs.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5 (f)(3).

9. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202.

10. Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

11. Plaintiff Kyle Bobay D.O. ("plaintiff" or "Dr. Bobay") lives in Centerville, Ohio and is a resident physician in the Wright State University Emergency Medicine Residency Program.

12. Defendant Wright State University ("Wright State"), is, and at all times mentioned was, an Ohio state university, a public institution of higher education and a body politic and corporate under R.C. 3352.01 and R.C. 3345.011, with its principle office in Dayton, Ohio.

13. Defendants Tom Gunlock, Marty Grunder, Andrew Platt, Dawn Conway, Douglas A. Fecher, Sean Fitzpatrick, Ranjan Kejriwal, Bruce Langos, William W. Montgomery are members of the Board of Trustees of Wright State University with the authority to administer the University under R.C. 3352.01.

14. Defendant Kettering Adventist Healthcare dba Kettering Health Network ("Kettering") is a non-profit corporation formed and existing under the laws of the state of Ohio, with its principle place of business in Dayton, Ohio.

## FACTUAL ALLEGATIONS

15. Defendant Wright State University Boonshoft School of Medicine is the sponsoring institution for the Wright State University Emergency Medicine Residency Program ("EM Residency Program") in which Dr. Bobay currently serves as a resident physician. Exhibit 1, p. 5.

16. As the sponsoring institution of the EM Residency Program, Wright State is responsible for administration, monitoring quality and assuring compliance with accreditation standards. Exhibit 1, p. 5.

17. The accreditation standards are set by the Accreditation Council for Graduate Medical Education (the "ACGME Requirements"). The ACGME Requirements provide that residency programs must function under "the ultimate authority and oversight of one Sponsoring Institution". Exhibit 2, p. 2. They further provide that sponsoring institutions must have a policy providing due process for residents for actions relating to dismissal from its residency programs. Exhibit 2, p. 14.

4

18.   Wright State operates its residency programs in cooperation with hospitals that serve as Wright State's fiscal agent in employing resident physicians in the programs.  Defendant Kettering is Wright State's fiscal agent for the purpose of the EM Residency Program.  Exhibit 1, p. 5.

19.   On March 27, 2020, Dr. Bobay  entered into a graduate medical education agreement (the "GME agreement") with defendants.  Exhibit 3.

20.   The GME agreement related to Dr. Bobay's participation as a resident physician in the Wright State's EM Residency Program for the period of July 1, 2020, through June 30, 2023.

21.   The GME agreement was executed by Dr. Michael Ballester in his capacity as a member of the faculty of Wright State University Boonshaft School of Medicine and as Program Director for the Wright State's EM Residency Program.  It was also executed by Dr. Robert Smith in his capacity as Vice President Medical Affairs for Wright State's EM Residency Program's fiscal agent, Kettering.

22.   The GME agreement provides in pertinent part that "If there is any dispute or complaint on any issue, the Due Process Policy for Residents and Fellows has been established as referenced in the Graduate Medical Education Manual.  The Due Process Policy provides for adjudication of the resident complaints and grievances related to actions that could result in…termination of the Resident." Exhibit 3. p. 2.

23.   The Wright State Graduate Medical Education Manual provides in its Due Process policy that "its procedures and standards are applicable to residents in all BSOM [Boonshoft School of Medicine] sponsored graduate medical education programs" and that a program may act to terminate a resident by providing a written notice of intent to terminate, which may be appealed to a panel of three faculty members for review."  Exhibit 1, pp. 43-44.

24.  The Kettering Graduate Medical Education Manual provides that its "Due Process policies and procedures are applicable to all residents in Kettering Health Network programs. In the case of WSUBSOM integrated residencies, the responsibilities herein assigned to the director of medical education will be the responsibility of the Wright State University Boonshoft School of Medicine." Exhibit 4, p. 45.

25.  On July 9, 2021, Kettering advised Dr. Bobay that the U.S. "Occupational Safety and Health Administration (OSHA) [had] published an Emergency Temporary Standard ("ETS") for health care employers to keep employees safe during the COVID-19 pandemic". Kettering explained that it was "working to finalize a written COVID-19 plan…as required by the ETS" and that he would be notified "when those documents were complete."

26.  On August 5, 2021, Kettering informed Dr. Bobay that it was requiring all medical staff to be vaccinated against COVID-19 by October 4, 2021. Exhibit 5.

27.  On August 14, 2021, Dr. Bobay submitted a request for religious exemption. Exhibit 6, pp. 1-2.

28.  On October 19, 2021, Kettering denied Dr. Bobay's exemption request. Dr Bobay submitted an appeal of that denial on that same day. Exhibits 7 and 8.

29.  The October 19 appeal was denied on October 22, 2021, and an explanation for the denial was provided to Dr. Bobay on November 1, 2021. Exhibits 9 and 10.

30.  On November 11, 2021, Kettering advised Dr. Bobay that the Center for Medical and Medicaid Services ("CMS") had published a regulation requiring Kettering "To have a policy in place ensuring that staff are vaccinated against COVID-19." Kettering set a new deadline for vaccination of January 4, 2022, in accordance with the CMS regulation.

31. Dr. Bobay submitted another appeal on November 11, 2021, with further information explaining his relevant religious beliefs. Exhibit 11.

32. On December 2, 2021, Kettering denied Dr. Bobay's second appeal on the grounds that the totality of his submission did not meet "the standard for a religious exemption." Exhibit 12.

33. On December 7, 2021, Kettering submitted a written notice of intent to terminate Dr. Bobay on January 4, 2022, if he had not received the COVID-19 vaccine by then. Exhibit 13.

34. On December 10, 2021, Dr. Bobay submitted an appeal of the termination notice to Wright State and Kettering, in accordance with the above described Due Process policies. Exhibit 14.

35. The appeal to Wright State is currently pending. Wright State's GME Manual provides that a hearing must be convened within 60 days after receipt of Dr. Bobay's appeal.

36. The appeal to Kettering was submitted to Dr. John Shrader, the Director of Medical Education for Kettering, as provided in Kettering's GME Manual. Dr. Shrader responded that the Wright State University Emergency Medicine Residency Program was not under his purview and that he was not able to address Dr. Bobay's appeal. Exhibit 15.

37. On December 16, 2021, Kettering's Human Resources department was notified of Dr. Bobay's appeal.

38. On December 21 and 22, 2021, Kettering's Human Resources Manager advised Dr. Bobay that the GME Manual Due Process policy was not applicable to Dr. Bobay's appeal and that he was denying and terminating the appeal. Exhibit 16.

39. The decision of Kettering Human Resources Manager violates Dr. Bobay's graduate medical education agreement as well as both the Wright State and Kettering GME Manuals' Due Process policies.

7

40. The decision violates the graduate medical education agreement provision that the GRE Manual Due Process Policy applies to "any dispute or complaint on any issue" and specifically applies to "grievances related to actions that could result in termination of the Resident." Exhibit 3, p. 2.

41. The decision violates Kettering's GME Manual provision that the "The Policy and Procedure section of the KHN Graduate Medical Education Manual has precedence [over KHN's Policies and Procedures] and is the responsibility of Medical Education. It also violates Kettering GME Manual provision that Wright State has the responsibility for Due Process policies and procedures related to Wright State integrated residencies, including Dr. Bobay's residency. Exhibit 4, pp. 7, 45.

42. The decision also violates Kettering's GME Manual provision that Dr. Bobay has the right to appeal academic actions under the Due Process policy because the termination of a graduate medical education agreement necessarily involves an academic action. Exhibit 4, p. 47.

43. Finally, the decision violates Kettering's purported exception to the GME Due Process policy for general misconduct because the GME Manuals specifically address vaccination as a GME program requirement. Further, the examples of misconduct cited include intoxication, disorderly conduct, sexual harassment, abusive language and fighting which are not comparable to Dr. Bobay's religiously motivated conduct. Exhibit 4, pp. 56, 48-49.

44. Moreover, even if the purported exception applied, the Kettering's GME Manual requires that such matters be brought to Wright State's Program Director for review. Exhibit 4, pp 48, 45. ("In the case of WSUBSOM integrated residencies, the responsibilities herein assigned to the [DME] will be the responsibility of the [WSUBSOM]." Further, even if Kettering's position that

its general policy applied was correct, that policy required review by Dr. Bobay's departmental leader, which did not occur.  Exhibit 17.

45.  Dr. Bobay has informed Wright State of the above-described actions by its EM Residency Program's fiscal agent, Kettering.  He has requested Wright State to exercise its authority and responsibility as sponsoring institution to preclude Kettering from denying him his due process rights under the GME Manual and from terminating the GME Agreement and his participation in the EM Residency Program on January 4, 2021.  Wright State has failed to take these actions.

46.  On October 24, 2021, Premier Health which operates Miami Valley Hospital granted Dr Bobay a religious exemption from its COVID-19 vaccine mandate.  Exhibit 18.

47.  On December 16, 2021, Wright State granted Dr. Bobay's religious exemption from its COVID-19 vaccine mandate, but did not address Kettering's denial of a religious exemption for Dr. Bobay.  Exhibit 19.

## COUNT I
### Violation of the Free Exercise Clause
### of the First Amendment to the United States Constitution
### (28 U.S.C. § 2201, et seq.)

48.  Plaintiff restates the foregoing paragraphs as if set forth fully herein.

49.  The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the federal government from abridging plaintiff's rights to free exercise of religion.  The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits states from abridging plaintiff's rights to free exercise of religion.

50.  Plaintiff has sincerely held religious beliefs that compel him to refuse vaccination.

51.  As shown above, defendants are governmental actors.  Their actions as set forth herein were all undertaken in accordance with policies, practices, customs, and procedures created, adopted and enforced under color of state law.

52.  Defendants' actions impermissibly burden plaintiff's sincerely held religious beliefs, compel him to abandon his beliefs or violate them under coercion, and force plaintiff to choose between his religious convictions and his continued position as resident physician.

53.  Defendants' actions effectively strips plaintiff of his right to religious exemption by subjecting him to unduly harsh and punitive measures, while affording others granted religious exemptions genuine accommodation and allowing them to retain their positions.

54.  Defendants' actions place plaintiff in an irresolvable conflict between compliance with the mandate and his sincerely held religious beliefs.

55.  Defendants' actions put substantial pressure on plaintiff to violate his sincerely held religious beliefs or face loss of his position as resident physician, professional standing, reputation, and the ability to support himself.

56.  Defendants' interpretation and application of the vaccine mandate is neither neutral nor generally applicable as it allows religious exemptions for some, but denies them to others.

57.  Defendants' actions thus target plaintiff's religious beliefs for disparate and discriminatory treatment.

58.  There is no legitimate, or compelling interest in defendants' denial of an exemption and accommodations for Dr. Bobay's sincerely held religious beliefs, while granting religious exemptions to others.

59.  Defendants' actions in denying genuine accommodations to plaintiff are not the least restrictive means of achieving an otherwise permissible government interest, which could be achieved by the same protective measures (masking, testing, quarantining, etc.) already being required of those for whom religious exemptions have been granted by defendants.

60.  Defendants' actions have caused, are causing, and will continue to cause irreparable harm and actual and undue hardship to plaintiff from violation of his sincerely held religious beliefs and the occupational, professional, social, and economic consequences pleaded above.

61.  Plaintiff has no adequate remedy at law to prevent the continuing violation of his constitutional liberties and sincerely held religious beliefs.  Plaintiff requires declaratory and injunctive relief to protect his right to free exercise of religion.


**COUNT II**
**Violation of Ohio Constitution, Article 1 Section 1 – Right To Refuse Medical Treatment**
**(28 U.S.C. § 2201, et seq.)**

62.  Plaintiff restates the foregoing paragraphs as if fully restated herein.

63.  Plaintiff has a fundamental right under Article I, Section 1, of the Ohio Constitution to refuse medical treatment to protect the liberties of personal security, bodily integrity and autonomy. *Steele v. Hamilton Cty. Community Mental Health Bd.,* 90 Ohio St. 3d 176, 180-181 (2000).

64.  "The liberty interests infringed upon when a person is medicated against his or her wishes is significant… This type of intrusion clearly compromises one's liberty interests in personal security, bodily integrity and autonomy." *Id*. at 182.

65.  "The right to refuse medication is not absolute and it must yield when outweighed by a compelling government interest." *Id*. at 181.

66.  "Whether the potential benefits [of medication] are worth the risks is a personal decision that, in the absence of a compelling state interest, should be free from government intrusion." *Id*. at 183.

67.  A state may have a compelling interest to override an individual's decision to refuse medication to prevent harm to that individual or others.  *Id*. at 183.

68.  The state's right to invoke its police power to override an individual's decision to refuse medication arises only when there is an imminent danger of harm.  *Id*. at 184.

69.  Any such forced medication must be medically appropriate for the individual and it must be the least intrusive means of accomplishing the state's interest of preventing harm. *Id.* at 184.

70.  The state must establish its compelling interest to override the individual decision to refuse medication by clear and convincing evidence.  *Id.* at 180.

71.  The Mandate's requirement to show proof of Covid-19 vaccination, unless exempted, requires a medical treatment, which plaintiff has a right to refuse under Article I, Section 1 of the Ohio Constitution.  Further, the emergency use authorization of the vaccines, as discussed below, is conditioned on plaintiff's right to refuse such medical treatment.

72.  Not only are defendants precluded from violating plaintiff's right to refuse medical treatment without a compelling interest, "the unconstitutional-conditions doctrine bars a State from achieving the same goal indirectly". *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908,914 (6th Cir. 2019).  This "principle 'forbids burdening [constitutional] rights by coercively withholding benefits from those who exercise them." *Id*. at 911.

73.  Defendants are unable to show the elements necessary to establish a compelling interest overriding plaintiffs' right to refuse medical treatment as described above.

74.  Plaintiff is not an imminent danger to harm himself or others because asymptomatic Covid-19 spread from individuals is negligible, and the Covid-19 infection survivability rate for people ages 20-49 are estimated by the CDC as 99.95% and have been shown by a study published in *The Lancet,* one of the world's oldest and best-known general medicine journals, to be 99.9991%.

75.  The Covid-19 vaccines are not medically appropriate for plaintiff because the risks outweigh the benefits.  The Covid-19 vaccine has a limited period of efficacy of about 4 to 6 months either because of the waning effects of the vaccine or the nature of Covid-19 variants. Extended protection would require the use of booster shots, with uncertain attendant risks of adverse effects.  The adverse events reported to the federal Vaccine Adverse Event Reporting System ("VAERS") through July 16, 2021, show at least a 39-fold increase in annualized vaccine deaths reported to VAERS.  Those who have recovered from Covid-19 have natural immunity which provides equivalent or greater protection than that generated by the Covid-19 mRNA vaccines which is likely to be long lasting.  There is also evidence that those who've recovered from Covid-19 and are then vaccinated have a heightened risk of adverse effects.

76.  Plaintiff has recovered from Covid-19 and has natural immunity.  As a result, he is protected from Covid-19 and the risks of Covid-19 vaccines outweigh the benefits as described above.

77.  The Covid-19 vaccines are not the least intrusive means of preventing harm because the treatment of the Covid-19 infection has improved tremendously, and those particularly vulnerable to Covid-19 have other means available to protect themselves.

13

## COUNT III
### Right to Free Exercise of Religion
### (First Amendment; 42 U.S.C. § 1983)

78. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

79. By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, defendants deprived plaintiff of his fundamental constitutional right to the free exercise of religion, all in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

80. Defendants' policies, practices, customs, and procedures, punish and impose discipline on plaintiff for alleged violations of defendants' new policies, simply for exercising his right to the free exercise of religion. Defendants' actions injure plaintiff by violating his constitutional rights through threat of discipline and sanction by defendants for failure to comply with their policies.

81. As a direct and proximate result of defendants' violation of the Fourteenth Amendment, plaintiff has suffered, is suffering, and will continue to suffer, irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief.

## COUNT IV
### Violation of O.R.C. 3792.04 – No Mandate for Non-FDA-Approved Vaccines
### (28 U.S.C. § 2201, et seq.)

82. Plaintiff restates the foregoing paragraphs as if set forth herein.

83. Under O.R.C. 3792.04, a state institution of higher education may not require a vaccine for which the FDA has not granted full approval and may not discriminate against an individual who has not received such vaccine by requiring the individual to engage in or refrain from engaging in

activities or precautions that differ from the activities or precautions of an individual who has received such vaccine.

84.  The Kettering's Covid-19 mandate violates R.C. 3792.04 because it requires plaintiff to take a vaccine not approved by the FDA.  The Covid-19 vaccines that are currently available to be taken, Johnson & Johnson, Moderna and Pfizer, have been authorized for emergency use only (the "EUA vaccines") and have not been fully approved by the FDA.  Comirnaty, the only Covid-19 vaccine that has been fully approved by the FDA, is not currently available.

### COUNT IV
### Violation of the EUA Statute
### (Asserted Under 21 U.S.C. § 360bbb-3)
### (28 U.S.C. § 2201, et seq.)

85.  Plaintiff restates the foregoing paragraphs as if set forth fully herein.

86.  The vaccines available to federal contractors and employees to satisfy defendants' vaccine mandates are only available under emergency use authorizations (EUAs) and are thus subject to the requirements of 21 U.S.C. § 360bbb-3.

87.  Under 21 U.S.C. § 360bbb-3, recipients of vaccines available under EUAs must have the right "to accept or refuse administration of the vaccines".

88.  Defendants' vaccine mandate would strip from plaintiff the right to refuse the EUA vaccines.

89.  Defendants' vaccine mandate is unlawful under 21 U.S.C. § 360bbb-3.

### COUNT V
### Violation of Title VII, 42 U.S.C. 2000e, et seq., O.R.C. 4112, et seq.

15

### Religious discrimination-failure to accommodate

90.  Plaintiff restates the foregoing paragraphs as if set forth fully herein.

91.  Plaintiff holds sincere religious beliefs that precludes him from receiving a COVID-19 vaccine.

92.  Plaintiff informed defendants of those beliefs and requested religious accommodations from the vaccine mandate.

93.  Defendants failed to engage in an interactive process with plaintiff regarding religious accommodation requests and instead only responded with denials of accommodations.

94.  Irrespective of the interactive process, defendants failed to provide plaintiff with reasonable accommodations for his religious beliefs.

95.  Defendants thereby discriminated against the plaintiff because of his religious beliefs.

96.  Defendants' failure to provide religious accommodations has harmed and will continue to harm the plaintiff.

97.  By failing to engage in the interactive process or offer any reasonable accommodation, defendants' discriminatory actions were intentional and/or reckless and in violation of Title VII and O.R.C. 4112, et seq.

98.  Plaintiff has filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC") complaining of these discriminatory actions. Although plaintiff's EEOC and OCRC charges remain pending, this Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's and the OCRC's administrative process. *See Drew v. Liberty Mut. Ins. Co.,* 480 F.2d 69, 74 (5th Cir. 1973).

## COUNT VI
### Violation of Title VII, 42 U.S.C. § 2000e, et seq., O.R.C. 4112, et seq.
### Religious discrimination-retaliation

99. Plaintiff restate the foregoing paragraphs as if set forth fully herein.

100. Plaintiff engaged in protected activity when he requested religious accommodations from defendants' vaccine mandate.

101. Defendants responded by denying his request and announcing that it would terminate his position as resident physician. This was so even though defendants conceded many of the requests for religious accommodation are legitimate by granting those requests.

102. Defendants responded to plaintiff's protected activity by giving him the false choice between vaccination and termination.

103. Plaintiff's religious beliefs and protected activity were the causes of defendants' adverse action. Defendants' disparate treatment of religious accommodation requests, confirms defendants' hostility to plaintiff's request for religious accommodation.

104. By retaliating against plaintiff for engaging in protected activity, defendants violated Title VII and O.R.C. 4112, et seq. This violation harmed and continues to harm the plaintiff.

105. Plaintiff has filed charges with the EEOC and the OCRC complaining of these retaliatory actions. This court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's and the OCRC's administrative process. *See Drew*, 480 F.2d at 74.

## COUNT VII
### Injunctive Relief

106. Plaintiff incorporates the allegations set forth above, as if fully restated herein.

107.  Plaintiff has a substantial likelihood of success on the merits for the reasons described above.

108.  By reason of defendants' violation of plaintiff's constitutional and statutory rights as described above, plaintiff is presumed to have suffered irreparable harm.

109.  Plaintiff has no adequate or speedy remedy at law.  Defendants' violations are ongoing and will continue so long as there is no injunction in place.  Defendants have not indicated that its mandate, or any related policy will be lifted.  If plaintiff refuses to comply, defendants have informed him that his position of resident physician will be terminated on January 4, 2022.

110.  The balancing of equities consideration merges into the consideration of the public interest. "In the preliminary injunction analysis, the public-interest factor merge[s] with the substantial-harm [to third parties] factor when the government is the defendant." *Daunt v. Benson*, 956 F 3d 396,422 (6th Cir. 2020).

111.  "Whether the grant of a preliminary injunction furthers the public interest [is] largely dependent on the likelihood of success on the merits because the protection of constitutional rights is always in the public interest." *Id. citing Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 752 (8th Cir. 2008).

## PRAYER FOR RELIEF

Plaintiff requests that the court:

a.  Declare defendants violated the First Amendment, the right to refuse medical treatment under Article I, Section 1 of the Ohio Constitution, Section 564 of the FDCA (21 U.S.C. §

360bbb.3), O.R.C. 3792.04 and 42 U.S.C. §1983 by denying plaintiff's requests for religious exemptions and coercing him to take emergency authorized vaccines.

b. Declare defendants violated Title VII and O.R.C. 4112 et seq. by failing to engage in an interactive process in response to requests for accommodations to their COVID-19 vaccine mandate.

c. Declare defendants violated Title VII and O.R.C. 4112 et seq. by discriminating against plaintiff by failing to provide reasonable accommodations to their COVID-19 vaccine mandate.

d. Declare defendants violated Title VII and O.R.C.4112 et seq. by retaliating against employees who engaged in protected activity.

e. Issue a temporary restraining order and/or preliminary injunction, followed by a permanent injunction, enjoining defendants from denying plaintiff's request for religious exemption and from terminating plaintiff's position as resident physician.

f. Award plaintiff reasonable attorneys' fees and costs.

g. Grant any other relief that the Court deems just, proper, and equitable.


Respectfully Submitted,

*/s/ Thomas W. Connors*
Thomas W. Connors (0007226)
Warner D. Mendenhall (0070165)
Mendenhall Law Group
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
tconnors@warnermendenhall.com

## JURY DEMAND

A trial by jury is demanded for all issues so triable in this case.

*/s/Thomas W. Connors*
Thomas W. Connors

## INSTRUCTIONS FOR SERVICE

Plaintiff requests the clerk of courts to serve defendants at the addresses listed in the caption of the complaint.

*/s/ Thomas W. Connors*
Thomas W. Connors

VERIFICATION OF COMPLAINT

I, Kyle Bobay D.O., plaintiff herein, state that the statements and allegations contained in the foregoing Complaint are true and accurate to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT

Kyle Bobay D.O.

State of Ohio              )
                           ) ss
County of Montgomery       )

This document was acknowledged before me on _31 December, 2021_____.

_____
Signature of Notary

My commission expires: 8/24/2026

Dre'Sean Walker
Notary Public, State of Ohio
My Commission Expires 08-24-2026

22