IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KYLE BOBAY, D.O., :
      Plaintiff,
    v. : Case No. 3:22-cv-002
WRIGHT STATE UIVERSITY, et : JUDGE WALTER H. RICE
al.,
      Defendants. :

---

DECISION AND ENTRY OVERRULING PLAINITFF'S MOTION FOR AN AWARD OF ATTORNEY FEES AND COSTS (DOC. #18); TERMINATION ENTRY

---

This matter is before the Court pursuant to an Amended Motion for an Award of Attorney Fees and Costs filed by Plaintiff, Kyle Bobay, D.O. ("Plaintiff" or "Dr. Bobay"). Doc. #18. A Memorandum in Opposition was filed by Wright State University ("WSU"), Doc. #19, and by Kettering Adventist Healthcare ("Kettering"). Doc. #21. Plaintiff filed a Reply, Doc. #22, and Kettering filed a Surrreply. Doc. #24. The matter is ripe for consideration.

**I.    Procedural History**

Plaintiff is a graduate student in the Wright State University Emergency Medicine Residency Program ("EM Residency Program"). Doc. #1, PageID#3. To

complete his residency, he was placed at Kettering[1] and employed by them pursuant to a three-year Graduate Medical Education Agreement ("GME Agreement" or "Agreement") that he signed with WSU and Kettering on March 27, 2020. Doc. #1, PageID##4-5. Under the terms of the Agreement, Kettering is WSU's fiscal agent in employing resident physicians in the EM Residency Program. *Id.*, PageID#5.

On August 5, 2021, Dr. Bobay was notified that all Kettering medical staff were to receive Covid-19 vaccinations no later than October 4, 2021. Doc. #1, PageID#6. On August 14, 2021, Plaintiff submitted to Kettering a religious exemption request from having the vaccination. *Id.* His request was denied and he filed an appeal. *Id.* Thereafter, he submitted a request to Miami Valley Hospital in Dayton, Ohio, operated by Premier Health, for a religious exemption from its Covid-19 mandate.[2] *Id.*, PageID#9; Doc. #1-18. On October 22, 2021, his appeal to Kettering was denied and shortly thereafter it extended the vaccination deadline to January 4, 2022, in accordance with the Center for Medical and Medicaid Services ("CMS"). *Id.*, PageID#6. On October 24, 2021, Premier Health granted Plaintiff's request for a religious exemption and on November 11, 2021, Plaintiff

---

[1] Kettering is a nonprofit network of fourteen Dayton and Cincinnati area medical centers, a college and outpatient facilities based in Dayton, Ohio. https://ketteringhealth.org.

[2] The Complaint does not state when Plaintiff submitted his request for a religious exemption to Premier Health.

submitted another appeal to Kettering which it denied on December 2, 2021. *Id.*, PageID##7 and 9.

On December 7, 2021, Dr. Bobay received a written notice of Kettering's intent to terminate him if he remained unvaccinated by January 4. 2022. Doc. #1, PageID#7. Plaintiff appealed the termination notice to Kettering and WSU pursuant to the due process clause in the Graduate Medical Education Manual that is referenced in the GME Agreement.[3] *Id.* On December 16, 2021, WSU granted Dr. Bobay's religious exemption from its Covid-19 vaccination mandate, but failed to address Kettering's denial of his religious exemption. *Id.*, PageID#9. On December 21 and 22, 2021, Kettering Health's Human Resources ("HR") Manager informed Plaintiff the Agreement was inapplicable to his appeal and that he was denying and terminating the appeal. *Id.*

In a December 29, 2021, email, Dr. Bobay requested a "review" of the HR Manager's December 21, 2021, denial of his appeal of notice of termination. Doc.#7-1, PageID#93. He stated that the "Kettering GME Manual" required a review by the Program Director for the Emergency Medicine Residency Program and that "[E]ven under the general Kettering policy . . . a review is to be provided by the department['s] next level leader or a VP." *Id.* Kettering responded that

---

[3] As alleged in the Complaint, both WSU and Kettering have Graduate Medical Education Manuals with Kettering's stating that the due process policies apply to all Kettering residencies and that for "integrated residencies" in the WSU Boonshoft School of Medicine, the responsibilities of Kettering's Director of Medical Education will be the responsibility of the Wright State University Boonshoft School of Medicine." Doc. #1, PageID#6.

3

same day and stated the appeal would be forwarded for review by a Vice President of Kettering.⁴ *Id.*

On January 3, 2022, Dr. Bobay filed a verified Complaint for a Temporary Restraining Order, Injunctive and Declaratory Relief against WSU, its Board of Trustees and Kettering. Doc. #1. Doc. #1. The Complaint asserted seven counts for declaratory relief and an eighth count for injunctive relief. *Id.* Plaintiff's prayer for relief requested that the Court declare Defendants violated (1) the First Amendment of the United States Constitution; (2) the right to refuse medical treatment under Article I, Section 1 of the Ohio Constitution; (3) Section 564 of the Food, Drug and Cosmetic Act, 21 U.S.C. §360bbb-3; (4) Ohio Revised Code § 3792.04; (5) 42 U.S.C. § 1983; and (6) Title VII, 42 U.S.C. 2000e, et seq., and Ohio Revised Code § 4112. *Id.*, PageID##18-19. Plaintiff also requested the issuance of a temporary restraining order ("TRO") and/or a preliminary and a permanent injunction to enjoin WSU and Kettering from denying Dr. Bobay's "request for religious exemption" and from terminating his position as a resident physician. *Id.*, PageID#19. The Complaint also sought reasonable attorney fees and costs. *Id.*

Simultaneous with the filing of the Complaint, Dr. Bobay filed a Motion for a TRO. Doc. #2. He requested the Court preclude WSU and Kettering "from violating his religious free exercise rights by terminating him" on January 4, 2022,

---

⁴ Plaintiff's December 29, 2021, email to Jeff Jones, Manager Human Resources, and his response on January 4, 2022, is not referenced in the Complaint but is attached as an exhibit to Kettering's Notice filed January 4, 2022. Doc. ##7 and 7-1.

"from the EM Residency Program. . .as a result of his refusal for religious reasons to take a Covid-19 vaccine." Doc. #2, PageID#72. A hearing was held and on January 4, 2022, the Court filed an Entry and Order Sustaining Plaintiff's Motion for Temporary Restraining Order. Doc. #6. Pursuant to the Court's Entry and Order, WSU and Kettering were enjoined "through January 18, 2022, subject to renewal pursuant to Rule 65(b)(2), from terminating" Dr. Bobay's "position as a resident physician in the Wright State EM Residency Program and terminating his GME Agreement on January 4, 2022, for refusing to take the Covid-19 vaccine." Doc. #6. Later that same day, Kettering filed a Notice stating that it had approved Plaintiff's request for a religious exemption from its Covid-19 vaccine requirement. Doc. #7-1, PageID#93. On January 5, 2022, the Court held a conference call with counsel and on January 7, it issued a Decision and Entry dissolving the TRO. Doc. 11, PageID#99. Thereafter, counsel for the parties engaged in discussions regarding Dr. Bobay's attorney fees and costs. When those discussions seemingly failed to yield an agreement, Dr. Bobay filed his Motion for Attorneys' Fees. Doc. #18.

**II. Legal Analysis**

Plaintiff's Motion for an Award of Attorney Fees and Costs is pursuant to the Civil Rights Attorney Fees Act of 1976, 42 U.S.C. § 1988. Doc. #18. To recover under this statute, Dr. Bobay must be "the prevailing party," a "legal term of art" used by Congress in a number of statutes, including § 1988(b). *Buckhannon Bd.*

5

*and Care Home, Inc. v. W.V. Dep't of Health and Human Resources*, 532 U.S. 598, 603 (2001). The prevailing party has been defined by the Supreme Court as "one who has been awarded some relief by the court" on the merits of his claim that has resulted in a "'material alteration of the legal relationship of the parties.'" *Id.* at 603-604 (citing *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792-793 (1989)). Under this definition, a litigant can be the prevailing party if he is awarded only nominal damages or if a settlement agreement, without an admission of liability, is entered into pursuant to a consent decree. *Id.* In *Buckhannon*, the Court further defined the meaning of the prevailing party and held that it required a "judicially sanctioned change in the parties' legal relationship" and not one where the suit was merely a "catalyst" for the plaintiff's goals being accomplished, in whole or in part, due to a defendant's voluntary change since this change lacked "the necessary judicial imprimatur." *Id.* at 605.

In *McQueary v. Conway*, 614 F.3d 591 (6th Cir. 2010), the Sixth Circuit considered whether the entering of a preliminary injunction could result in the plaintiff being the prevailing party and thus entitled to an award of attorney fees and costs. The plaintiff in *McQueary* filed suit asking the court to declare portions of a Kentucky statute that barred protests at military funerals unconstitutional under the First Amendment and to issue an injunction preventing the statute's enforcement. Six months after the Court issued the injunction, the statue was repealed, the case was dismissed as moot and the request for attorney's fees under § 1988(b) was denied. The Sixth Circuit reversed and remanded. It stated

6

that "when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988" and that a court must conduct a "contextual and case-specific inquiry" to make that determination. *Id.* at 605. In conducting this inquiry, the Court stated that a "material change" in the parties' legal relationship is required along with "lasting relief." *Id.* at 597. The "victory" cannot be "transient" and "ephemeral" since "[P]revailing party status... does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Id.* at 598 (quoting *Sole v Wyner*, 551 U.S. 74, 82-86. (2007). Instead, it must be "enduring" and irrevocable. *Id.* at 86.

Here, as stated by the Court, the TRO was granted to preserve the status quo and to prevent Dr. Bobay's termination on January 4, 2022, so that his constitutional and statutory claims against Defendants could be later determined on their merits. Doc. 17-2, PageID#128. Following the Court's issuance of the TRO, however, Kettering, for whatever reason, swiftly relented and granted Plaintiff's appeal of his request for a religious exemption from the Covid-19 vaccination mandate. As a result, on January 7, 2022, the case was settled, with the exception of attorney fees and costs, and the TRO entered on January 4, 2022 was "dissolved and no longer in effect." Doc. #11.

Plaintiff argues he is entitled to prevailing party status because of his success in obtaining a TRO on "his claim" of preventing his termination. Doc. #22, PageID#222. He cites the Court to *McQueary*, 614 F.3d at 603, and *Planned*

7

*Parenthood Southwest v. DeWine*, 931 F.3d 530, 540 (6th Cir. 2019). Plaintiff's argument fails for at least two reasons. First, although the Complaint included "Injunctive Relief" as Count VIII and Dr. Bobay requested that Defendants be enjoined from terminating his position as a resident physician in his Prayer for Relief, a TRO is a remedy and not a claim for relief. *Madej v. Maiden*, 951 F.3d 364, 369 (6th 2020). Second, *McQueary* held only that the District Court should make a "contextual and case-specific inquiry" prior to awarding attorney fees for a preliminary injunction under § 1988(b) and, an award of attorney fees and costs was made in *Planned Parenthood* because the preliminary injunction resulted in a "material alteration of the legal relationship of the parties." *Planned Parenthood*, 931 F.3d at 538 (citing *Sole*, 551 U.S. at 82). Specifically, the injunction prevented enforcement of an Ohio statute for nearly 12 years of litigation with the Sixth Circuit twice affirming its appropriateness. *Planned Parenthood*, 931 F.3d at 539. No such "material alteration of the legal relationship of the parties," *Sole*, 551 U.S. at 82, occurred when this Court granted a TRO preventing the termination of Dr. Bobay's GME Agreement on January 4, 2022, for refusing to take the Covid-19 vaccine.

Dr. Bobay next argues that by obtaining the TRO, he prevailed by "every measure of victory" and "materially altered the parties legal relationship." Doc. #22, PageID#222-223 and 226. Again, the Court disagrees. The TRO did not award "relief on the merits of his claims," *Buckhannon*, 532 U.S. at 608 (citation omitted), provided "no lasting relief," *McQueary*, 614 F.3d at 597, and Plaintiff

8

"gained no enduring change." *Solle*, 551 U.S. at 86. Instead, as specifically stated by the Court on January 4, 2022, the TRO's purpose was to preserve the status quo "so that reasoned resolution of the dispute may be held." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir. 1996) (purpose of a TRO under Rule 65 is to preserve the status quo to permit a reasoned resolution of a dispute).

Because the Court does not find, under the facts of this case, that Plaintiff was the prevailing party, the Motion for an Award of Attorney Fees and Costs, Doc. #18, is overruled.[5]

### III. Conclusion

For the reasons set forth Plaintiff's Motion for an Award of Attorney Fees and Costs is OVERRULED.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

[5] While it is tempting to speculate on why Kettering changed its position after the TRO was issued, such speculation or, for that matter, even an inference construed in favor of Plaintiff that Kettering realized the weakness of its factual and legal position, is no substitute for evidence. The Court simply does not know why Kettering changed its position.

9

Date: November 1, 2022

*[signature]*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

10